Jerry Thomas GUNTER,
Plaintiff–Appellant.

v.

The COCA–COLA COMPANY,
Defendant–Appellee.

No. 87–3103.

United States Court of Appeals,
Eleventh Circuit.

April 27, 1988.

Rehearing and Rehearing En Banc
Denied June 6, 1988.

James W. Howard, Howard, Secret & Wilde, Atlanta, Ga., for plaintiff-appellant.

Thomas C. Garwood, Jr., Garwood & McKenna, PA, Orlando, Fla., for defendant-appellee.

Before VANCE and HATCHETT, Circuit Judges, and O'KELLEY*, District Judge.

O'KELLEY, Chief District Judge:

This is an appeal from a judgment for the appellee, The Coca–Cola Company (Coke), after a bench trial of a racial discrimination action brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981. The appellant, Jerry Thomas Gunter (Gunter), appeals the adverse judgment on the grounds that the district court erred in concluding that Coke's failure to promote him was not racially motivated. For the reasons set forth below, we affirm.

### Facts Below

Gunter is a black male who was employed by Coke at their Auburndale Juice Plant in 1971. In 1979, Coke promoted him over several whites to the position of "Chief Feed Mill Operator" (Chief). As a Chief, Gunter was under the supervision of Feed Mill Superintendent Moody, and he occasionally filled in for Moody when the latter was on vacation. He also trained at least one employee to be a Chief.[1]

In late 1982, Moody announced his intention to retire from his position as Plant Superintendent. In his search for a suitable replacement for retiring Superintendent Moody, Plant Manager Walker, in whom sole authority for making the decision rested, narrowed the field of applicants, reviewed their personnel files, con-ducted informal interviews with them and solicited evaluations from their supervisors. Both Superintendent Moody and a personnel manager named Dunn recommended Whatley, a white male, but neither recommended Gunter. Walker ultimately promoted Whatley to the superintendent position vacated by Moody. Gunter argues that Walker's decision not to promote him was motivated by Moody's racial prejudice.[2]

### Discussion

The trial court applied the appropriate legal test in evaluating this Title VII discrimination action. That standard was set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and has been further explicated by subsequent Supreme Court opinions. *See, e.g., Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The trial court restated this test as follows:

> [T]he plaintiff has the initial burden of establishing a prima facie case of racially disparate treatment. [cit.] Once a plaintiff has proved his prima facie case by a preponderance of the evidence, the burden of production shifts to defendant to 'articulate some legitimate, nondiscriminatory reason for the employee's rejection.' [cit.] If defendant meets this burden, plaintiff must then prove by a preponderance that defendant's articulated reasons 'were not its true reasons, but were a pretext for discrimination.' [cit.]

(Memorandum Opinion at 6–7).

Applying this test to the instant facts, the district court concluded that Gunter had made out a prima facie case of discrimination, thus shifting to Coke the burden of producing a nondiscriminatory reason for rejecting him. Coke made such a proffer

---

* Honorable William C. O'Kelley, Chief U.S. District Judge for the Northern District of Georgia, sitting by designation.

1. Ironically, W.B. Whatley, the man whom Gunter trained, was ultimately promoted to the position at issue in this appeal.

2. The record is replete with evidence of Moody's racial prejudice. The district court found that

Moody had discriminated against black employees by: (1) accusing Gunter and some other black employees caught sleeping on the job of having a case of "black ass;" (2) segregating employee restrooms; (3) giving easier job assignments to whites; and (4) giving preference to white Chiefs in the assignment of overtime. (Memorandum Opinion at 4–5).

by showing that Gunter lacked the financial and managerial skills necessary for promotion. The court then concluded that Gunter had not surmounted the final hurdle; namely, the requirement that he prove that Coke's stated nondiscriminatory reasons were not its true reasons, but were a pretext for discrimination. In essence, the district court found that while *Moody* was racially biased, it also found that *Walker's* promotion decision was neither racially biased nor swayed by the racial sentiments of Moody.

Our review of the trial court's factual determination on the issue of discriminatory intent is governed by the "clearly erroneous" standard set out in Federal Rule of Civil Procedure 52(a). *Anderson v. City of Bessemer City, North Carolina*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Pullman–Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). Under this standard, the appellate court may only reverse the district court when it is left with the "definite and firm conviction that a mistake has been committed." *Anderson*, 470 U.S. at 573, 105 S.Ct. at 1511 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

The record is replete with evidence supporting the district court's determination that Plant Manager Walker's promotion decision was not motivated by racial prejudice. Walker testified that the Plant Superintendent position entailed responsibility over approximately $1.4 million in material, equipment and labor annually, and he noted that Gunter lacked the necessary skills or initiative to discharge the duties such a position would necessitate. (Tr. 83, 86 & 89). Walker testified that Whatley, on the other hand, had superior qualities and skills. (Tr. 90). Although Walker did review Gunter's personnel file, and while

these contained evaluations by Moody, Walker testified that he personally observed Gunter's job performance over a six year period.[3] (Tr. 80–87). During this time, Walker had an opportunity to assess Gunter's qualifications for promotion, and even advised Gunter that he would not be promoted unless he improved his bookkeeping and accounting skills. (Tr. 83). Gunter, however, never heeded this advice.

We do not doubt that the district court was correct in concluding that Moody, Gunter's supervisor, was racially biased. The record, however, contains no evidence that Walker was racially biased.[4] Furthermore, as there is evidence to the effect that Walker based his promotion decision on his personal observations of Gunter, and not necessarily upon Moody's recommendations, the district court committed no clear error in declining to find that Gunter's purported skills deficiency was a pretextual excuse for failing to promote him. Accordingly, the decision of the district court is

AFFIRMED.

HATCHETT, Circuit Judge, dissenting:

I respectfully dissent. The majority and the district court held that Gunter failed to prove that Coca-Cola's stated nondiscriminatory reasons for failing to promote him were a pretext for discrimination. The evidence shows that this finding on the issue of discriminatory intent is clearly erroneous.

It is undisputed that Walker was responsible for the promotion decision and that no evidence indicates that Walker was racially biased. Walker, however, based his decision not to promote Gunter primarily on input from Moody who was found to be racially biased. Because no formal procedure was available to guide Walker in fill-

3. The appellant vigorously argues that Walker relied solely upon Moody's evaluations of Gunter. In support of this proposition during oral argument, the appellant repeatedly referred to Walker's testimony that he did not consider Gunter for the promotion after referring to his personnel file and records. (Tr. 80). When read in isolation, this testimony supports the appellant's argument. A thorough reading of

Walker's testimony, however, reveals that Walker claimed that he based his decision on his personal observations of the appellant.

4. In fact, Walker testified that he first approached two black employees to determine if they wished to be considered for the promotion.

ing the vacancy left by Moody, Walker relied heavily on conversations with Moody and on personnel files which contained evaluations and reprimands prepared by Moody. Walker testified, "I checked [Gunter's] personnel files and his records, but I did not consider him as—after checking his personnel records in the file, I did not consider him as a replacement for Moody." This reliance on files prepared primarily by Moody indicates that Walker's ultimate decision was severely tainted by Moody's concededly discriminatory nature. At his deposition, Walker stated that "[Moody] is supposed to have someone to succeed him if he retires." After Moody recommended one man who refused the position, Moody recommended Whatley who ultimately replaced Moody. The pervasive influence of Moody, who was definitively found to be racially biased, was primary in Walker's promotion decision. The post-hoc reasons which Walker offers are therefore a pretext for the failure to promote Gunter. In fact, Gunter had substantial seniority over Whatley and had substituted as superintendent on previous occasions. Although the majority found that Gunter lacked the necessary financial skills to perform as superintendent, the evidence fails to show specifically how Whatley possessed superior financial skills. Thus, the only conclusion from the evidence is that Walker's decision to promote Whatley over Gunter was not based on Whatley's superior financial skills, but on Moody's discriminatory attitude which contaminated Gunter's employment file.

This case should be reversed on the ground that Gunter proved that Coca Cola's reasons for failing to promote him were pretextual.