Robert E. TUCK, Plaintiff–Appellant,

v.

HENKEL CORPORATION, Defendant–Appellee.

No. 91–2591.

United States Court of Appeals, Fourth Circuit.

Argued March 5, 1992.

Decided Aug. 25, 1992.

As Amended Sept. 3, 1992.

Eugene C. Hicks, III, Charlotte, N.C., argued, for plaintiff-appellant.

James Bernard Spears, Jr., Haynsworth, Baldwin, Johnson & Greaves, P.A., Charlotte, N.C., argued (Stephen D. Dellinger, on brief), for defendant-appellee.

Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and MURRAY, Senior United States District Judge for the District of Maryland, sitting by designation.

## OPINION

ERVIN, Chief Judge:

Robert E. Tuck filed an action in the Western District of North Carolina against Henkel Corporation alleging that he was discharged in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 (ADEA or "the Act"). The district court entered summary judgment against Tuck. We reverse.

### I.

Henkel manufactures and sells specialty chemical products for various business applications, primarily for the textile and paper industries. Henkel is a German-owned company that has its home office in Dusseldorf, Germany, and owns 24 facilities in the United States. Henkel's operations in Charlotte, North Carolina included two manufacturing facilities, one on Westinghouse Boulevard and the second on Sugar Creek Road. Tuck worked for Henkel's Sugar Creek plant for 14 years, the last 12 as Plant Manager.

Tuck was discharged on March 1, 1989, when he was 59 years old, even though he was working in a fully satisfactory manner according to his supervisor, Brent Sears. Tuck had suffered a mild heart attack on December 17, 1989, although Henkel does not contend that Tuck's health had anything to do with his dismissal. Henkel replaced Tuck as Plant Manager with a younger man, Mark Smith, who was then 37 years old.

According to Henkel, Neville McDonald, Henkel's Vice President of Manufacturing Engineering, Organic Product Group, and Sears, who managed both Charlotte facilities and had supervised Tuck since 1988, decided on their own to dismiss Tuck immediately before March 1, 1989. They needed to cut costs in their Charlotte operations because of a reduced need for chemicals from the two plants, and accordingly reduced the manufacturing schedule at the Westinghouse plant from seven to five days a week and laid off eight Westinghouse employees. Henkel's Textile Chemical Research and Development Group (R & D Group), headed by Dr. Rudy Heer, was responsible for new product development. According to Henkel, its Sugar Creek plant relied on the R & D Group for technical assistance in day-to-day manufacturing operations; this time spent on technical assistance reduced the amount of time the R & D Group could spend on new product development and was costly. McDonald and Sears contend that they wanted the Sugar Creek Plant Manager to take on the R & D Group's technical support responsi-

bilities. McDonald and Sears state that they considered four candidates, including Tuck, on the basis of technical ability and job performance for this new, reconstituted, Plant Manager position. They selected Smith, who had Bachelor of Science and Masters degrees in chemical engineering as well as technical experience with Henkel. Tuck, on the other hand, had only completed his general equivalency degree for high school and one year of technical college, although he also had approximately 30 years of experience, often as a plant manager, in various chemical manufacturing companies.

Tuck tells a different story. He contends that Heer, who supervised Tuck for the two years before Sears, was an age-biased individual who discriminated against Tuck by giving him unjustly poor evaluations. Tuck stated in deposition that Heer repeatedly said to him that Heer wanted to get rid of the older people and replace them with "young blood." J.A. 101. Marvin Thomas, who was Superintendent of Production and Warehouse at the Sugar Creek plant, also stated in an affidavit that Heer had pointedly stated to several older employees, including Tuck, that what Henkel needed was *"younger people."* J.A. 323.

Tuck contends that Robert Kahn, Director of Human Services in Henkel's United States headquarters in Ambler, Pennsylvania, was the real decision-maker in his dismissal, and that Kahn was influenced by Heer in making his decision. As evidence that Kahn made the decision, Tuck points to a handwritten note labelled "confidential" by Kahn to his subordinate, Michael Schubert, Human Resources Manager in Charlotte, written in late December 1988 or early January 1989. This note responded to Sears' and Schubert's suggestion that Henkel increase Tuck's salary from $48,600 to $50,060 per year. The note stated, "Based on our plans I would ask you and

Brent [Sears] to reconsider the appropriateness of a salary increase." J.A. 188. Tuck reads "our plans" to refer to Kahn's decision to fire Tuck based on Heer's recommendation and make it appear that the reason was Henkel's Charlotte reduction-in-force. Henkel contests this reading, arguing that "plans" mean nothing more sinister than the general force reductions. In support of his reading, Tuck points out that Kahn stated that he had spoken with Heer several times about Tuck and that Heer did not want Tuck to continue as Plant Manager.[1] Also, Kahn stated that he knew that Sears was considering firing Tuck when Kahn wrote the note. Tuck argues that this is reason to doubt Sears' and McDonald's story that they were the real decision-makers, since they claimed not to have decided to fire Tuck until fully two months later. Tuck also points out that Sears had told Tuck that Henkel would continue employing Tuck even after it closed the Sugar Creek plant[2] because he was doing such a good job and that Sears approved two salary raises for Tuck—not, Tuck argues, the words and actions of a man soon to decide to fire Tuck. Finally, Tuck notes that McDonald and Sears have no written memoranda or communications with Personnel backing up their story; their recollections of the procedures used to select Smith are hazy at best.

Tuck also presents anecdotal evidence that Henkel discharges employees because of their age. Tuck provides the examples of several older employees who were fired, and Thomas, Superintendent of Production at Sugar Creek, states in his affidavit:

It has been apparent for many years to anyone employed by Henkel for a considerable length of time that the corporation has a policy of terminating its employees as they become older, generally before reaching age 55 and certainly before age

---

1. Sears had also seen Heer's performance reviews of Tuck and Heer had told Sears that he was unhappy with Tuck's technical competence.

2. Henkel closed the Sugar Creek production facility entirely in April 1991, transferring several

workers from the manufacturing division to other facilities but keeping the manager who had previously replaced Smith on the Sugar Creek payroll.

60, and thus before higher monthly payments have become payable under Henkel's retirement plans. . . .

J.A. 323. When questioned at deposition, Kahn could name but one Henkel employee who was still working at age 65, the normal retirement age according to Henkel's retirement plan. That employee was the president of a company that Henkel had acquired, who retired at age 65. In addition, Kahn could remember only one managerial employee who retired after age 62, and he was a vice president.

Finally, Tuck attempts to rebut Henkel's asserted rationale for discharging him. Tuck contends that Henkel did not fire him to keep the R & D Group out of day-to-day operations to save money and develop new products. According to Thomas' affidavit, Smith, Tuck's replacement, had no experience in running a chemical plant, no knowledge in altering chemicals, and refused to be bothered with questions about chemical production. Furthermore:

> I know of no change whatever that took place with respect to the Research and Development staff or chemists spending more or less time in assisting with our production of chemicals at Sugar Creek under Bob Tuck as Plant Manager, under Mark Smith as Plant Manager, or under Tom McKillop as Plant Manager. It had always been rare that anyone from R & D ever had anything to do with production after R & D developed and released a new product for production. R & D was called to the same extent if a problem developed under Mr. Tuck, Mr. Smith, and Mr. McKillop, up until production was decreased on closing the plant. I also am aware of no increase in the development of new products by R & D during the time Mark Smith was Plant Manager. As I was Superintendent of Production, I was in a position to know the foregoing things.

J.A. 324. In addition, McKillop, Smith's replacement as Plant Manager at Sugar Creek on August 1, 1990, had a technical competency much the same as Tuck's.

After discovery, Henkel moved for summary judgment. The district court entered judgment against Tuck following a hearing on June 10, 1991. Tuck timely appealed.

## II.

Summary judgment is appropriate in those cases where there is no genuine dispute as to a material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). We must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). Summary judgment is appropriate only where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986), such as where the non-moving party has failed to make a sufficient showing on an essential element of the case that the non-moving party has the burden to prove. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). We review summary judgments *de novo*. *Higgins v. E.I. Du Pont De Nemours & Co.*, 863 F.2d 1162, 1167 (4th Cir.1988).

Under the ADEA, it is unlawful for an employer to terminate an employee on the basis of the employee's age. 29 U.S.C. § 623(a)(1). The substantive elements of an ADEA claim are that (1) an employee covered by the Act (2) has suffered an unfavorable employment action by an employer covered by the Act (3) under circumstances in which the employee's age was a determining factor in the action in the sense that but for the employer's motive to discriminate against the employee because of the employee's age, the employee would not have suffered the action. *Fink v. Western Elec. Co.*, 708 F.2d 909, 914 (4th Cir.1983). An employee can prove that age

was a determining factor in an ADEA-prohibited employment action (1) under ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue, or (2) under a judicially created proof scheme originally used in the Title VII context in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and subsequently adapted for use in ADEA cases. *See Lovelace v. Sherwin–Williams Co.*, 681 F.2d 230, 239 (4th Cir. 1982).

■■■ Although Tuck argues that his case may be analyzed in either fashion, it is examined most profitably for him in the latter manner. Applying the factors set forth in *McDonnell Douglas*, the employee must first establish a *prima facie* case of age discrimination by showing that (1) he is a member of the protected age group (over 40, 29 U.S.C. § 631(a)); (2) he was discharged or demoted; (3) at the time of discharge or demotion he was performing his job at a level that met his employer's legitimate expectations; and (4) following his discharge or demotion, the plaintiff was replaced by someone of comparable qualifications outside the protected class. *See EEOC v. Western Elec. Co.*, 713 F.2d 1011, 1014 (4th Cir.1983). Such a *prima facie* case creates only an inference of age discrimination, which the employer can then rebut by presenting legitimate, non-discriminatory reasons for the termination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). If the employer rebuts the employee's inference of age-based discrimination, the employee can still prevail by demonstrating by a preponderance of the evidence that the defendant's

proffered reason was a pretext for discrimination. *Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093–94. To make this demonstration, the employee must show that as between the plaintiff's age and the defendant's explanation, age was the more likely reason for the dismissal, or that the employer's proffered explanation is simply "unworthy of credence." *Id.* at 256, 101 S.Ct. at 1095; *EEOC v. Clay Printing Co.*, 955 F.2d 936, 941 (4th Cir.1992). The burden of persuasion remains with the plaintiff throughout. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095.

The court below briefly considered the *McDonnell Douglas* scheme, but ultimately found that it was of no help to Tuck. *See* J.A. 52. Considering all facts in a light most favorable to Tuck, as we must in reviewing the grant of summary judgment against him, we are compelled to disagree. First, Tuck has made his *prima facie* case based on undisputed facts. He was a member of the protected age group, since he was 59 years old when he was fired. According to his supervisor, Sears, Tuck was performing in a fully satisfactory manner at the time he was let go. Finally, Tuck was replaced as Plant Manager by a younger person with comparable qualifications to manage the plant, the 37–year–old Smith.

■■■ Henkel claims and the district court stated in its disposition from the bench that this is a force reduction case and not a firing-and-replacement case. We do require that plaintiffs meet a somewhat different burden in establishing their *prima facie* case in force reduction cases.[3] However, in this case it is uncontradicted that the Plant Manager position remained and that Smith replaced Tuck in it. As a result, the force reduction cases do not bear on Tuck's requirements in establishing a *prima facie* case. Henkel's claim that it added responsibilities to Tuck's position as part

---

**3.** In force reduction cases, rather than showing that the plaintiff was replaced by a younger person, the plaintiff must show that "persons outside the protected age class were retained in the same position or that there was some other evidence that the employer did not treat age

neutrally in deciding to dismiss the plaintiff." *Herold v. Hajoca Corp.*, 864 F.2d 317, 319 (4th Cir.1988), *cert. denied*, 490 U.S. 1107, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989); *see also Western Elec.*, 713 F.2d at 1014–15.

of a general reduction-in-force, thus making Tuck unqualified for the reconstituted position, is only relevant to the parties' rebuttal opportunities.

The court below determined, correctly, that Henkel met its rebuttal burden of presenting legitimate, non-discriminatory reasons for the termination—needing a technically proficient manager to relieve pressure on the R & D Group. It is undisputed that Smith had better technical credentials than did Tuck.

◼ Finally, the court determined that Tuck did not meet his burden of showing that Henkel's asserted reason was a mere pretext for discrimination. It is at this stage that the court implicitly, and wrongly, weighed the evidence to Tuck's detriment. First, having the benefit of all permissible inferences, Tuck has shown that Henkel's rationale is unworthy of credence. Thomas, who as long-time Superintendent of Production would be in a position to know, states in his affidavit that the R & D Group was rarely involved with the plant's activities once it developed new chemicals. If this is true, then it is unlikely that Henkel would have needed to alleviate the pressure on the R & D Group by consolidating the manager and technical positions. Henkel is correct in pointing out that what is important in ADEA analysis is the employer's reasons for dismissing the employee at the time the decision is made, not what might have transpired afterwards. Even so, it is relevant to consider in assessing the credibility of Henkel's story that, believing Thomas as we must, after the R & D Group was relieved of the "burden" of supporting a technically deficient Tuck it helped the plant no less than before and the number of new products it developed was no greater than previously; Smith was replaced by someone with no more technical background than Tuck had; and Smith

was a poor manager with little knowledge of or interest in running the plant. While these facts might simply be the result of what may in 20–20 hindsight have been a poor business decision by Henkel, they might equally suggest that Henkel's story is false. It is the place of the jury, not the court, to make this choice.

Tuck has presented sufficient evidence to create a material dispute as to whether age is a more likely reason for his dismissal than Henkel's asserted reason. He has presented strong anecdotal evidence (which he may be able to develop into statistical evidence for trial) that Henkel fires its employees before they reach retirement age. Indeed, Kahn could remember but two Henkel employees who reached age 62—supposedly the age for early retirement—a vice president and the president of a company that Henkel had taken over. Thomas suggests that Henkel's well-known reason for this practice is to save on retirement benefits. If it is Henkel's position that it fires older employees "merely" to save on pension benefits, then the jury should be given the opportunity to consider such a policy as evidence of age discrimination. *See White v. Westinghouse Elec. Co.,* 862 F.2d 56, 62 (3d Cir.1988) (discharge of employee to avoid payment of pension benefits relevant to demonstrate pretext in ADEA case because these benefits are inextricably linked to years of service and hence age; thus summary judgment inappropriate); *Metz v. Transit Mix, Inc.,* 828 F.2d 1202, 1208 (7th Cir.1987) (firing older employee assertedly because his pay is too high may be taken as evidence of age discrimination on case-by-case basis if facts support conclusion that pay is a proxy for age).[4]

Finally, Tuck presents some probative evidence that Heer, Tuck's former supervisor, was biased against older workers and

**4.** In *EEOC v. Clay Printing Co.,* 955 F.2d 936, 942 (4th Cir.1992), this court determined that an employer's general statement relating years of service, salary, and age did not provide evidence of age discrimination in firing because it was "not related to a person, employment decision, or hiring or firing practice." The statement discussed in *Clay* is unlike the evidence that Tuck presents here, which, if true, suggests that Henkel's desire to save on pension benefits *is* directly related to their practice of firing older employees.

that Heer influenced the decision to fire Tuck. According to Tuck, Heer repeatedly stated that he wanted to get rid of the older people and replace them with "young blood." J.A. 101. Thomas wrote that Heer pointedly told several older employees, including Tuck, that what Henkel needed was *"younger people."* J.A. 323. Because these comments suggest a desire to fire older employees and replace them with younger ones, they demonstrate, for summary judgment purposes, Heer's age-bias.[5] The question then arises whether Heer influenced Tuck's dismissal. Tuck alleges that Kahn was the real decision-maker based on the "confidential" note, Sears' previously expressed admiration for Tuck's work, and Sears' and McDonald's arguably incredible story surrounding their decision to fire Tuck. Kahn admitted that Heer had frequently told him that Heer was displeased with Tuck. Even if Sears and McDonald did alone decide to fire Tuck, Sears similarly admitted that he had read Heer's poor evaluations of Tuck and that Heer had spoken with Sears negatively about Tuck. Whether Heer influenced Kahn or Sears is thus an open question.[6] Also, the fact that Heer is head of the R & D Group that would be the largest beneficiary of Tuck's discharge, according to Henkel's account, suggests a continuing role for Heer in making that decision.

In open court the district court below expressed concern over the issue of Heer's age bias and whether he influenced Tuck's dismissal, but the court was ultimately persuaded that if Heer did influence Tuck's discharge, such influence was age-neutral. *See* J.A. 26–32, 52. By making this determination, the court denied Tuck the benefit of all permissible inferences; it is the jury's job at trial to weigh the evidence, not the court's business to do so at summary judgment.

### III.

For the aforementioned reasons, we reverse the district court's grant of summary judgment in favor of Henkel and remand the case for trial on the merits.

*REVERSED AND REMANDED.*

---

**5.** In *Clay Printing*, 955 F.2d at 942, this court held that employer statements that it needed to "attract newer, younger people" and "young blood," were not probative of age discrimination or discriminatory purpose. In *Clay Printing*, the evidence did not show that the employer's positive references to younger potential employees suggested that the older existing employees should be fired. We do not read *Clay Printing*'s holding to prevent statements that a company wants to replace its older employees with younger ones from being considered evidence of age discrimination, for it was to keep older workers from suffering adverse employment actions based on the assumption that younger workers are more desirable by virtue of their age that Congress enacted the ADEA. *See* 29 U.S.C. § 621(b) ("It is therefore the purpose of this chapter to promote employment of older persons based on their ability rather than age").

**6.** Henkel relies on *Gunter v. Coca–Cola Co.,* 843 F.2d 482, 484 (11th Cir.1988), for the proposition that a fired employee cannot rely on demonstrating the prejudice of a supervisor who is not the ultimate decision-maker to prove that discrimination motivated the employer's termination decision. However, *Gunter* was decided under Fed.R.Civ.Proc. 52(a)'s "clearly erroneous" standard of review, not Rule 56(c)'s summary judgment standard, because the trial judge had decided as a factual matter after trial that the decision-maker did not rely on the manager's negative comments in deciding to fire the employee. In this case, no factfinder has determined to what extent Heer influenced Tuck's discharge.