**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**NORTHWEST STRUCTURAL COMPONENTS, INC., Defendant.**

**No. 6:91CV00052.**

United States District Court, M.D. North Carolina, Winston–Salem Division.

Aug. 16, 1993.

Ronald J. Arrington, E.E.O.C., Charlotte, NC, for plaintiff E.E.O.C.

David C. Pishko, Elliot, Pishko, Gelbin & Morgan, P.A., Gordon W. Jenkins, Wells, Jenkins, Lucas & Jenkins, Robert M. Elliot, [COR LD NTC] Elliot, Pishko, Gelbin & Morgan, P.A., Winston–Salem, NC, for defendant Northwest Structural Components, Inc.

## MEMORANDUM OPINION

OSTEEN, District Judge.

This case was tried before the court on July 23–26, 1993. Plaintiff Equal Employment Opportunity Commission ("EEOC") contends that Defendant discriminated on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. The contentions arise out of Defendant's refusal to re-employ Elizabeth Rhodes, a female, as a truck driver. Having heard and considered the evidence, the parties' briefs, and the arguments of counsel, the court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. Defendant Northwest Structural Components, Inc. ("Northwest") is a company which builds and sells roof trusses and other products for houses and structures.

2. Elizabeth Rhodes applied for a job as a truck driver for Northwest in October 1987. She was employed effective November 1987. The job required her to deliver trusses on flatbed dump trucks. Throughout her employment, Rhodes performed well as a driver, had an excellent attendance record, and willingly took any load.

3. Rhodes was paid the same rate as male drivers during her employment with Northwest.

4. Rhodes suffered a work-related injury in late December 1987. Rhodes' job was held open for her from December 1987— March 1988 while she was unable to work due to the work-related injury.

5. Rhodes' total pay remained approximately the same even at the end of her tenure at Northwest. Plaintiff has not proven that Rhodes was being demoted or "starved out" by being moved to a second shift.

6. Plaintiff has also not proven that Rhodes was improperly denied one of the new trucks.

7. Rhodes, by her own testimony, got along fine with everyone at Northwest except Bud Cook, a fellow employee.

8. Rhodes' personnel file does not contain any documentation concerning disciplinary problems or counselling sessions pertaining to problems with her job performance.

9. There were at least two customer complaints about Rhodes. Kerry Gionis, vice-president of Northwest, was aware of these.

10. Gionis also found that Rhodes complained often and was argumentative. Gionis thought that Rhodes had a poor attitude.

11. In August 1988, Rhodes gave notice that she had decided to leave her job at Northwest. She voluntarily terminated her position on September 11, 1988.

12. John McClive, a manager, and Frank Harvey, Rhodes' supervisor, signed off on a personnel action form dated September 12, 1988, stating that Rhodes was eligible for rehire.

13. Several months later Rhodes decided she wanted to return to Northwest. Between November 1988 and March 1989, she made several inquiries about potential openings.

14. In November or December 1988, Deborah Ford, personnel manager, mentioned to Gionis that Rhodes was interested in returning to the company and was eligible to be rehired.

15. Gionis replied that "Lynn just does not fit in out there." Plaintiff has not proven that Gionis said that "a woman just does not fit in out there."

16. Northwest, through Gionis, made the decision not to re-employ Rhodes.

17. On or about December 12, 1988, Jack Tedder was hired as a driver. He had a Class A License for a short period of time. On or about December 19, 1988, David Williams was hired as a driver. Williams had obtained a chauffeur's license five months before applying for the position. These two men had less experience than Rhodes.

18. Between September 1987 and April 1991, Defendant rehired six drivers. Henry Cook had been fired on several occasions for various reasons, but was rehired on September 17, 1987, for the final time. He was fired again in September 1988. In September

1987, Donald Kiger was fired for being intoxicated, having damaged company equipment, and poor attendance. He was rehired in October 1987 as a driver. On January 25, 1988, he quit to accept other employment. On May 17, 1988, he was rehired. On June 27, 1988, he quit again without notice and is not eligible for rehire. Reymundo Del Real quit his job as a truck driver with Northwest in September 1987, after having a dispute with then Plant Manager Brent Holcomb. Del Real was rehired in April 1990, after assuring McClive that the prior problems would not recur. Jesse White quit his job as a truck driver with Northwest in 1982. He was rehired in 1989. Gionis did not rehire anyone who had customer complaints lodged against them at the time of rehire. At least one customer complaint was lodged against Cook, but this was after he was rehired for the last time.

### CONCLUSIONS OF LAW

1. Title VII prohibits an employer from refusing to hire (or rehire) a person because of that person's sex. Presumably in the hope of "progressively ... sharpen[ing] the inquiry into the elusive factual question of intentional discrimination," *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255, n. 8, 101 S.Ct. 1089, 1094, n. 8, 67 L.Ed.2d 207 (1981), courts have developed several word formulas applicable to Title VII cases.[1] The recent Supreme Court decision in *St. Mary's Honor Center v. Hicks*, —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), makes clear that the record as a whole must be reviewed in determining whether the employer intentionally discriminated against an individual and that the plaintiff maintains the burden of persuasion at all times.

2. Further discussion of the legal word formulas is not necessary at this time because resolution of this case hinges on the court's factual and credibility determinations.

That is, under any proof scheme, the ultimate legal question to be resolved in this case is whether Northwest refused to rehire Rhodes because of her sex. The answer to this ultimate question, at least in this case, turns not on the legal word formulas, but on the specific facts.

3. Based on the findings of fact, the court concludes that Northwest's decision not to rehire Rhodes was not based on the fact that Rhodes is a female. It is undisputed that Rhodes was hired, paid the same rate, and had her job held open. By her own testimony she got along fine at Northwest and, in fact, wanted to return to work there. EEOC has not proven that Rhodes was treated unfairly in the assignment of trucks or the timing of her work hours.

It also is undisputed that Gionis was the one who made the decision not to rehire Rhodes. Gionis was aware of customer complaints about Rhodes. Gionis also felt that Rhodes complained often and was argumentative.

While it is true that others were rehired despite worse track records (the worst being Kiger who damaged equipment while intoxicated), this does not necessarily indicate discriminatory motive. The statistical type evidence here is not very probative because the pool is small. No other employees are similarly situated as Rhodes. Gionis did not rehire anyone who had customer complaints lodged against them at the time of rehire. The two men hired during the time Rhodes was reapplying for the position were not rehires.

Additionally, and most significantly, the court finds that EEOC has not proven by a preponderance of the evidence that Gionis made any derogatory statements about women such as "there is no place for a woman out there." That is, the court did not find Ford's

**1.** The courts have established several proof schemes which a plaintiff may follow in establishing the existence of sex discrimination. The first is under ordinary principles of proof by presentation of so-called direct evidence that sex was a determining factor in the selection decision. The second proof scheme, originally formulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct.

1817, 36 L.Ed.2d 668 (1973), relies on inferences from so-called indirect and circumstantial evidence and shifting burdens of proof and production. *See Tuck v. Henkel Corp.*, 973 F.2d 371, 374–75 (4th Cir.1992). Additionally, a framework for "mixed-motive" cases was adopted by the Supreme Court in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

testimony to be credible especially since Ford testified in deposition that Gionis said, "Lynn just does not fit in out there."

Consequently, the court concludes that Plaintiff has failed to prove that Defendant refused to rehire Elizabeth Rhodes on account of her gender and Plaintiff is not entitled to recover.

A judgment in accordance with this document shall be filed contemporaneously herewith.