Phyllis F. SHORE, Plaintiff,

v.

A.W. HARGROVE INS. AGENCY,
INC., Defendant.

Civ. A. No. 3:94CV435.

United States District Court,
E.D. Virginia,
Richmond Division.

Jan. 11, 1995.

Robert Patrick Geary, Richmond, VA, for plaintiff.

Jack Willard Burtch, Jr., Thamer Eugene Temple, III, McSweeney, Burtch and Crump, Richmond, VA, for defendant.

## MEMORANDUM OPINION

SPENCER, District Judge.

THIS MATTER comes before the Court on Defendant's motion for summary judgment. For the reasons stated hereinafter, Defendant's motion is hereby GRANTED.

### I

On October 19, 1993, Plaintiff Phyllis F. Shore filed a charge of discrimination with the EEOC alleging that her former employer, A.W. Hargrove Insurance Agency, Inc., ("Hargrove") had discharged her and later refused to rehire her because of her age in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621 *et seq.* ("ADEA"). The EEOC determined (1) the discriminatory discharge claim was untimely filed, and (2) with respect to her claim of discriminatory hiring, Plaintiff failed to apply for the position.

Hargrove is an independent insurance agency in the business of placing coverage for individuals and businesses with various insurance companies. Plaintiff was hired by Defendant as a claims representative on March 31, 1981. In 1988, she was promoted to the position of Claims Manager.

In 1991, Defendant hired Lori Pazera, who was later trained by Plaintiff. In December 1992, the claims duties were split, and Plaintiff was directed to handle the personal lines, while Pazera was to handle the commercial lines. In November 1992, Defendant's executive vice president, James M. Henry, told Plaintiff that "no one would lose a job over the change."

Lori Pazera received a property and casualty insurance license ("P & C license") in January 1993 after taking what is known as "the crash course." The course takes place on three weekends, and is followed by an exam. Thus, it takes approximately five to six weeks to obtain a license. Pazera was encouraged by management at Hargrove, especially James Henry, to get this license.

In 1987, Plaintiff had also signed up to take the crash course to become licensed. However, Defendant's treasurer, Grayson Murphy, told her she did not need to take this course, as a license was not needed for her position.

In February 1993, Hargrove needed to reduce its operating costs and streamline its operations. *See* Affidavit of James M. Henry ("Henry Aff."), @ 2. Hargrove contends that it decided to eliminate its claims department, and planned for all claims to be handled by its "customer service" representatives. *Id.* These representatives have a P & C license, while claims representatives generally do not carry this license. Unlike customer service representatives, unlicensed claims representatives cannot provide advice regarding insurance coverage, recommend particular types of coverage or companies to insure with, or solicit additional sales or business. Plaintiff did not have this license.

However, while Plaintiff was employed at Hargrove, customer service representatives had asked her for advice and information on coverage questions with the apparent consent of management.

Hargrove contends that because Plaintiff did not carry a license, it had no other job for her at the time, and discharged her on March 2, 1993. *Id. @* 4. Plaintiff was fifty-six years old at the time. Plaintiff was given no warning or notice that she was going to be fired. Her job performance in the claims department had been "excellent."

At the time of Plaintiff's discharge, only Plaintiff and Lori Pazera were handling the claims adjustment work for Defendant. Pazera was about thirty-four years old, and was making $5,000 less than Plaintiff. Pazera was not discharged, and continued to do nothing but claims work once Plaintiff was discharged.

After Plaintiff's discharge, "claims" inquiries were initially referred to Hargrove's customer service representatives. *Id. @* 2. About seven weeks after Plaintiff's discharge, Hargrove decided to hire a new, licensed customer service representative. Defendant hired Rachel Frank, who was sixty-six years old. In addition to her duties as a licensed customer service representative, Defendant also asked Frank to handle "personal lines" claims work. This work had been performed by Plaintiff prior to her discharge.

In September 1993, Defendant needed to hire a replacement for Lori Pazera. On September 7, 1993, Hargrove contacted Charlene Smith, a licensed customer service representative at another company, about coming to work for Defendant.

After Defendant contacted Smith about the job, Defendant also ran a "blind" advertisement in the newspaper.[1] Defendant claims this was done in the event Smith did not come to work at Hargrove. *Id. @* 7. Defendant further claims that no one responding to the advertisement was hired because Smith accepted the offer. *Id.*

Defendant's advertisement specified that those interested in applying for the job should send a resume to the company. Plaintiff did not submit a resume, as she wanted to discuss the matter with Frank Hargrove, Sr., who was president of the company.

On September 8, 1993, Plaintiff went to Hargrove's office to speak with Mr. Hargrove. At the meeting, Plaintiff asked "Frank, could you tell me why no one has picked the phone up and called me back, called me for this?" Mr. Hargrove responded, "I don't know why no one hasn't [sic] called you for that. But I will see that you get a call." There was no further discussion about the advertisement or other job opportunities. Plaintiff did not leave a resume or job application.

On September 10, 1993, at the request of Mr. Hargrove, James Henry tried to call Plaintiff about the advertisement and job. Plaintiff was not home, and Henry left a message on her answering machine. On Monday, September 13, 1993, Plaintiff returned Henry's call and left a message for him with the switchboard operator. Henry did not return Plaintiff's call, and Plaintiff left additional messages for Henry the following two days. Sometime that week, Smith was interviewed and offered the job. She was forty years old at the time she was hired.

No one from the company had ever asked Plaintiff whether she had obtained a license from the time she was discharged until the time she inquired about the position after seeing Defendant's advertisement.

**II**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

---

1. The advertisement read:
 INSURANCE—Agency Claims Representative needed. Will consider individual with agency or company experience. P & C license pre-

ferred. Send resume to CI–917, c/o Richmond Newspapers, P.O. Box 85333, Richmond, VA 23293.

is entitled to a judgment as a matter of law." *Estate of Kimmell v. Seven Up Bottling Co.,* 993 F.2d 410, 412 (4th Cir.1993) (quoting Fed.R.Civ.P. 56(c)). The party moving for summary judgment has the initial burden of showing that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

■ After the movant has met this burden, the non-moving party may not rest on its pleadings, but must come forward with specific facts showing that evidence exists to support its claims and that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. In ruling on a motion for summary judgment, a court must believe the evidence of the non-movant, and all justifiable inferences must be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512.

### III

With respect to Plaintiff's claim that Defendant impermissibly discharged her because of her age, Defendant urges that 1) Plaintiff recanted this claim in her deposition, and 2) Plaintiff cannot support this claim by either the ordinary principles of proof or by the judicially created proof scheme originally used in the Title VII context in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). This Court agrees.

### A

■ Defendant first contends Plaintiff has recanted her discriminatory discharge claim. In support of its contention, Defendant points to the following portion of Plaintiff's deposition:

Q. Now you say here in number three [third paragraph of Plaintiff's charge of discrimination filed with the EEOC], "I believe I was discharged and later denied hire because of my age, 56," and you were 56 at the time you signed this; right?

A. I was 56.

Q. "in violation of the Age Discrimination In Employment Act of 1967, as amended." You believe that's true; do you?

A. I believe I wasn't rehired because of my age.

Q. Do you believe you were discharged because of your age?

A. I believe I was discharged because, I told you earlier, that the Hargrove Agency had an idea that they were going to eliminate this whole function and dole it out to 20 people.

Q. Okay.

A. But I believe, yes, I was discriminated against when I was not rehired.

Q. Okay. So, is it fair to say you don't believe you were discharged because of your age, but you were discharged because of the way they reformed the jobs?

A. That's correct.

Q. Okay, but you do believe that you were later denied hire because of your age; is that correct?

A. That's correct.

Pl. Dep. 84–85. *See also* Pl. Dep. 45 (acknowledging that it is possible that she was discharged because she had no insurance license).

In her response, Plaintiff attempts to clarify this portion of her deposition. Plaintiff explains that she was actually referring to her opinion at the time she was discharged, back in March of 1993. At that time, she did not then believe she had been discharged as a result of age discrimination. However, after seeing Defendant's advertisement in September 1993, she then suspected that Hargrove had engaged in age discrimination when it discharged her earlier that year.

Plaintiff also summarily notes that the defendant has omitted earlier portions of her deposition, where Plaintiff supposedly af-

firms her discriminatory discharge claim. However, Plaintiff merely points to Defendant's purported omission, and fails to discuss or attach these alleged portions of her deposition to her response.

This Court finds that the portion of Plaintiff's deposition highlighted by the defendant clearly indicates that the plaintiff abandoned her discriminatory discharge claim. Her testimony is framed in the present tense, and explicitly indicates her disavowal of this claim. Plaintiff cannot now create a triable issue by contradicting her own clear testimony after the fact.

**B**

Even assuming *arguendo* that Plaintiff did not recant her discriminatory discharge claim, Plaintiff's claim must nevertheless fail.

■ To avoid summary judgment on her claim of discriminatory discharge, Plaintiff must produce evidence showing that, "but for [Hargrove's] motive to discriminate against [her] because of [her] age," she would not have been discharged. *See Goldberg v. B. Green & Co.,* 836 F.2d 845, 847 (4th Cir. 1988).

■ Plaintiff can prove her discriminatory discharge claim in one of two different ways:
> [Plaintiff] may meet [her] burden "under ordinary principles of proof by any direct or indirect evidence relevant to and sufficiently probative of the issue." ... Alternatively, [she] may rely on the judicially created proof scheme for Title VII cases ... which has been adapted for application in ADEA litigation.

*Id.* at 847–48 (quoting *EEOC v. Western Elec. Co.,* 713 F.2d 1011, 1014 (4th Cir.1983) (citations omitted)). Based on the record before the Court, Plaintiff has not met her burden under either analytical approach.

**1.**

■ To meet her burden under ordinary principles of proof, Plaintiff "must produce direct evidence of a stated purpose to discriminate and/or circumstantial evidence of sufficient probative force to reflect" age discrimination. *Goldberg,* 836 F.2d at 848. Plaintiff summarily contends that her "affidavit shows she was not treated the same as Ms. Pazera in regard to not being discharged ..." Pl. Mem. in Opp., at 5. This Court disagrees. There is simply no evidence, direct or indirect, of an illicit animus of age discrimination on which a jury could reasonably find for the plaintiff.

First, Plaintiff was not treated the same as Lori Pazera because Pazera had a P & C license. Pazera also worked in a different department.[2] Furthermore, it is irrelevant whether Defendant encouraged Pazera, and not Plaintiff, to obtain a license two months before the reduction-in-force. Even assuming Defendant knew it would be reducing its workforce at that time, there is no indication that the management's decision to encourage Pazera was in any way related to age. Defendant may have encouraged Pazera simply because it preferred Pazera's personality. Indeed, for the purposes of Plaintiff's claim, Defendant could have relied on any reason, or absolutely no reason at all, for its decision, so long as this decision was not impermissibly based on Plaintiff's age.

Second, even if Plaintiff was dissuaded from getting an insurance license back in 1987, what happened at that time is not sufficiently probative of the business conditions and job requirements under different supervisors six years later. *See Dorsch v. L.B. Foster Co.,* 782 F.2d 1421, 1423 (7th Cir.1986) (whether Plaintiff was qualified "depends upon the nature of the employer's business at the time to offer or terminate employment is made").

Third, there is no evidence that the $5,000 salary difference between Pazera and Plaintiff had anything to do with Hargrove's decision to discharge Plaintiff. Even if this had been a factor, such economic considerations are not probative of age discrimination. *See, e.g., Woroski v. Nashua Corp.,* 31 F.3d 105, 109–10 n. 2 (2nd Cir.1994) ("ADEA does not prohibit an employer from acting out of concern for excessive costs, even if they arise from age-related facts—such as that employees with long seniority command a higher

---

2. Pazera worked the "commercial" lines, while Plaintiff worked the "personal" lines.

salary and benefits expensive than new hires) (citing *Hazen Paper Co. v. Biggins*, —— U.S. ——, —— – ——, 113 S.Ct. 1701, 1706–07, 123 L.Ed.2d 338 (1993)).

Fourth, even if Hargrove previously allowed Plaintiff to give customer service representatives advice on coverage questions, Hargrove had an unqualified right to change its policy. Hargrove notes that it wanted its employees to have licenses because 1) for legal reasons, Hargrove believes its employees handling claims should have an insurance license, and 2) for business reasons, Hargrove wants its employees to have an insurance license so they can be more versatile in the range of duties they perform.

Fifth, Plaintiff's perception of the job's requirements is irrelevant. It is Hargrove's perception of the job that is controlling. *Cf. Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir.1980) (employee's perception of his "versatility," and his belief that his competence as an analyst was not confined to the field of logistics, were irrelevant, as "[i]t is the perception of the decision maker which is relevant").

Sixth, Plaintiff was replaced by Rachel Frank, who was sixty-six years old at the time Hargrove hired her. Frank also had a P & C license. Thus, Plaintiff was replaced by someone older and with superior qualifications.

### 2.

■ To meet her burden of showing discriminatory discharge under the *McDonnell Douglas* approach, Plaintiff must first establish a *prima facie* case of age discrimination by showing:

1) she is a member of the protected age group;

2) she was discharged;

3) at the time of discharge she was performing her job at a level that met her employer's legitimate expectations; and

4) following her discharge, the plaintiff was replaced by someone of comparable qualifications outside the protected class.

*See Tuck v. Henkel Corp.*, 973 F.2d 371, 375 (4th Cir.1992), *cert. denied*, —— U.S. ——,

113 S.Ct. 1276, 122 L.Ed.2d 671 (1993); *EEOC v. Clay Printing Co.*, 955 F.2d 936, 941 (4th Cir.1992). Such a *prima facie* case only creates an inference of age discrimination, which the employer can then rebut by presenting legitimate, non-discriminatory reasons for the termination. *Tuck*, 973 F.2d at 375. If the employer is successful, the *prima facie* case dissipates, and the plaintiff bears the ultimate burden of proving that the defendant intentionally discriminated against the plaintiff. *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1315 (4th Cir.1993) (citing *St. Mary's Honor Center v. Hicks*, —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993)); *Green v. Commonwealth of Virginia*, No. 2:93CV255, 1994 WL 675196, *3–4 (E.D.Va. Jan. 21, 1994), *aff'd*, 40 F.3d 1243 (4th Cir.1994). In meeting the ultimate burden, the employee can show that the defendant's proffered reason was a pretext for discrimination. *Mitchell*, 12 F.3d at 1315. Pretext can be established by showing that age was the more likely reason for the dismissal, or that the employer's proffered explanation is unworthy of credence. *Tuck*, 973 F.2d at 375.

■ In the instant case, Plaintiff cannot establish a *prima facie* case, as she cannot meet the requirements of the third and fourth prongs of the *McDonnell Douglas* test.

The third prong necessarily implies that Plaintiff was "qualified" to work for Defendant. In the instant case, Defendant specifically sought to employ individuals with P & C licenses. Plaintiff did not carry this license.

The fourth prong requires Plaintiff to show that she was replaced by someone of comparable qualifications outside the protected class. Plaintiff cannot show that she was "replaced," as the claims department had been eliminated. *See Moore v. Reese*, 817 F.Supp. 1290, 1299 (D.Md.1993) (Plaintiff could not satisfy prima facie case because the job which he held was discontinued in the reorganization of the department). To the extent Plaintiff insists the claims department had not been eliminated, this Court once again notes that Rachel Frank, who was eventually assigned to handle the tasks pre-

viously performed by Plaintiff, was sixty-six years old at the time she was hired, and had a P & C license. Thus, Plaintiff was replaced by someone older and with superior qualifications.

■ Even assuming *arguendo* that Plaintiff could establish a *prima facie* case, this Court holds that the defendant has nevertheless sufficiently rebutted any inference of age discrimination. Since the plaintiff has failed to show any pretext or intentional discrimination, her claim of discriminatory discharge must fail.

## IV

With respect to Plaintiff's claim that Defendant refused to rehire her on the basis of age, Defendant again contends that Plaintiff has failed to produce any evidence supporting her claim. This Court agrees.

■ The analysis of this claim is identical to the Court's analysis of Plaintiff's discriminatory discharge claim. To avoid summary judgment, Plaintiff must produce evidence showing that but for Hargrove's motive to discriminate against her because of her age, she would have been hired in place of Charlene Smith. *See Goldberg v. B. Green & Co.*, 836 F.2d 845, 847 (4th Cir.1988). Once again, Plaintiff can attempt to show that age was a determining factor in Defendant's hiring decisions under the ordinary principles of proof, or via the *McDonnell Douglas* proof scheme.

## A

■ Plaintiff insists that her affidavit contains indirect evidence that she was "not treated the same as Charlene Smith in not being hired." Pl. Mem. In Opp., at 5. She specifically notes that 1) Defendant's advertisement sought a claims representative, and not a customer service representative, 2) the advertisement merely stated that a P & C license was "preferred," and 3) James Henry, vice president at Hargrove, could not explain

why Smith, and not Plaintiff, was recruited to work at Hargrove. This Court disagrees. The record contains no direct or indirect evidence of age discrimination on which a jury could reasonably find for the plaintiff.

The fact that the advertisement specifically stated "license preferred," demonstrates that Charlene Smith was more qualified for the position than Plaintiff, as she had a P & C license which the company desired. Although the advertisement sought a claims representative, the defendant had every right to seek a claims representative with a P & C license, who is capable of doing more than just claims work. This Court cannot review Hargrove's legal business decision. *See Pfeifer v. Lever Bros. Co.*, 693 F.Supp. 358, 365 (D.Md.1987) (refusing to review the prudence of employer's management decisions), *aff'd*, 850 F.2d 689 (4th Cir.1988). Furthermore, the fact that Henry could not explain why Smith was preferred over the plaintiff does not constitute evidence that the defendant's decision was based on the applicants' relative ages.

Plaintiff's pleadings contain no factual support for her claims. *See* Pl. Complaint @ 9 (alleging only that "Plaintiff was ... refused consideration for re-hire and refused re-hire because of her age"). *See also* Plaintiff's Answers to Defendant's Interrogatories No. 3.[3] Indeed, when asked to state all the facts that made her believe she was not rehired by Hargrove because of her age, Plaintiff responded "I felt like that was the only reason I was not hired back. Why wouldn't the Agency hire me back if it wasn't for my age? What had I ever done?" Pl. Dep. 86. *See also* Pl. Dep. 85 ("I believe it was my age that I was denied rehire because, if I was rehired at Hargrove, they may have an assumption that I would have to be rehired at the same price I went out at"). When asked if she could state "any other reason" why she believed she was a victim of age discrimination, she responded "no." Pl. Dep. 88.

Since Plaintiff's speculative statements and conclusory allegations contain no factual sup-

---

**3.** In response to an interrogatory asking for "each and every act of discrimination or acts suggesting discrimination," Plaintiff asserted "[t]he act of discrimination was the discharge of me because of my age and the refusal to hire me because of my age. I do not know if there are any direct witnesses to the events other than the persons who did it on behalf of defendant. I was eminently qualified for the work I was doing for defendant[.] I was really good at it and it was only because of my age that I was let go."

port, they are insufficient to create a triable issue of fact. *See Goldberg*, 836 F.2d at 848; *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985) (wholly speculative assertions will not suffice).

**B**

 Plaintiff has also failed to establish her case under the *McDonnell Douglas* approach. Even though Plaintiff may be able to establish a *prima facie* case,[4] Defendant has articulated legitimate non-discriminatory reasons for its actions.

Plaintiff, on the other hand, claims Defendant's proffered reasons are pretextual, by once again pointing to 1) the language of the advertisement, 2) the fact that the plaintiff had previously given out information to customers and customer service representatives with the consent of management, and 3) the fact that the defendant never sought to discover whether Plaintiff had a license before hiring Smith.

The Court has already dismissed these allegations, as they simply do not raise an inference of pretext or an intent to discriminate. Plaintiff's bald allegation that Hargrove had the burden of discovering whether Plaintiff had received a license before approaching Charlene Smith, is completely unsupported. Even if the defendant had made such an inquiry before hiring Smith, Plaintiff was not licensed at that time. As such, she cannot show that but for her age, Hargrove would have rehired her.

**V**

After untangling the web of allegations that the plaintiff has weaved around her

claim of age discrimination, all that remains is an individual, over forty, who has had the misfortune of losing her job. This factual scenario, without more, can never support an age discrimination complaint. Disgruntled, as well as distinguished employees simply cannot pick age, sex, race, or any other type of discrimination from out of the thin air, and use these as mechanisms for reinstatement or retaliation. Employers are generally granted broad latitude in their business decisions, and this Court cannot review the soundness of a company's legitimate business decision.

For the reasons stated hereinabove, Defendant's motion for summary judgment is hereby GRANTED. An appropriate Order will issue.

---

4. This Court disagrees with Defendant's contentions that Plaintiff cannot show that 1) she applied for the job, and 2) someone outside the protected age group was selected in her place.

Although Plaintiff admits she did not formally apply for the job by sending a resume to the company as instructed by Hargrove's advertisement, she nevertheless met with the president of the company and was told someone would give her a call. While Plaintiff did not specifically inform the president that she wanted the job, this is implicit from their conversation. Indeed, the president's response indicates that he knew of Plaintiff's desire. *Cf. Huchzermeyer v. AT & T Communications*, 746 F.Supp. 99, 102 (N.D.Ga. 1990), *aff'd*, 929 F.2d 706 (11th Cir.1991).

Although Charlene Smith was forty years old at the time she was hired, and therefore within the protected class, an ADEA claim involving replacement by another does not require as a matter of law proof that the other was outside the protected age group. Instead, the Court will look to the absolute and relative ages of the claimant and her replacement in assessing whether a factual inference of age discrimination is permissible. *See Lovelace v. Sherwin–Williams Co.*, 681 F.2d 230, 242 n. 13 (4th Cir.1982); *McDaniel v. Mead Corp.*, 622 F.Supp. 351, 356–57 (W.D.Va.1985), *aff'd*, 818 F.2d 861 (4th Cir. 1987).