MIDLAND–ROSS CORPORATION,
Plaintiff-Appellant,

v.

AMERICAN CYANAMID COMPANY et
al., Defendants-Appellees.

No. 76–1268.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 16, 1977.

Decided and Filed May 4, 1977.

Thomas P. Mulligan, Raymond J. Durn, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for plaintiff-appellant.

John Lansdale, Squire, Sanders & Dempsey, David A. Nelson, James Woodring, Cleveland, Ohio, for defendants-appellees.

Before WEICK, EDWARDS and LIVELY, Circuit Judges.

LIVELY, Circuit Judge.

This is a diversity action in which the plaintiff sought to recover from the defendants money which the plaintiff paid as personal property taxes to the State of Ohio in the year 1970. The district court denied recovery, and the plaintiff has appealed. A stipulation of facts reveals that the plaintiff, Midland-Ross Corporation (M-R), sold to the defendant, American Cyanamid Company (Cyanamid), the assets of a business known as the IRC Fibers Division of Midland-Ross on December 29, 1969. The sale was made pursuant to a purchase agreement which was filed as an exhibit with the complaint. The only question before the district court was whether Cyanamid was liable to M-R for the sum of $146,389 on account of personal property taxes paid by M-R to the State of Ohio in 1970. M-R contends that under the terms of the purchase agreement Cyanamid is obliged to reimburse it for this tax payment.

Personal property taxes were dealt with in Section 2.5 of Article II of the purchase agreement as follows:

2.5 Apportionments. Subject to § 2.6, there shall be apportioned between Midland-Ross and Cyanamid, as of 7:30 a. m., Eastern Standard Time, on the date of the Closing, the following items relating to the Acquisition Assets and their operation: all items customarily apportioned on the sale of real estate, including real estate taxes and utility charges; service contracts; payroll; prepaid insurance premiums to the extent applicable; and rent. If the amount of any such items cannot be ascertained at the Closing, apportionment of such items shall be made as soon after the Closing as the amount thereof is ascertained. All amounts which shall be due from Cyanamid to Midland-Ross, or from Midland-Ross to Cyanamid, by reason of such apportionments shall be paid no later than ten days after the date of the Closing or, as to any item not then ascertained, as soon as possible after being ascertained. Personal property taxes shall not be prorated but Cyanamid shall pay all such taxes due and payable in the calendar year 1970 and Midland-Ross shall pay all such taxes due and payable in the calendar year 1969.

In the year 1970 Cyanamid paid personal property taxes to the State of Ohio of $136,674 on the inventory purchased from M-R on December 29, 1969 which was on hand as of December 31, 1969. Since M-R continued in business in Ohio after the sale of its Fibers Division to Cyanamid and was engaged in manufacturing on December 31, 1969, it was also required to pay personal property taxes to the State of Ohio in the year 1970. Because of the manner in which inventory values were calculated for personal property taxation under existing Ohio law, M-R was required to determine the value of its inventory at the end of each month and divide by the number of months in which it was engaged in business in determining the tax value of its inventories in 1969 upon which tax was due in the year 1970. In this calculation M-R was required to include the value of its Fibers Division inventories for the months prior to the sale of Fibers Division assets to Cyanamid even though they were not owned by M-R on December 31, 1969.[1]

The district court noted that the Fibers Division inventory was not the entire inventory upon which personal property taxes were due from M-R in the year 1970, but that the $146,389 payment represented the tax on that portion of M-R's total personal property tax attributed to the inclusion of the Fibers Division inventory in its return. In its memorandum the district court wrote:

> Plaintiff bears the burden of persuasion in this action. Plaintiff has failed to persuade the Court that the contract language in question entitles it to a recovery herein. While there is no doubt that plaintiff's tax base included the value of the fibers inventory as a component thereof, such was the case by virtue of a legal fiction built into the Ohio tax laws as regards valuing inventory for an ongoing business rather than as a consequence of actual ownership of those assets during the tax year. In point of fact plaintiff was not paying personal property tax upon its actual inventory at any given time in the tax year, but rather was paying personal property tax based upon a statutory formula which obliged it to estimate its total average inventory for

---

[1] Stipulations Nos. 11 and 12, agreed to by the parties, were as follows:

11. Had Midland-Ross ceased to engage in business of any kind in Ohio on December 29, 1969, it would not have paid any personal property taxes in Ohio in 1970. Had the I.R.C. Fibers Division been a Midland-Ross subsidiary rather than a division when it was sold on December 29, 1969, Midland-Ross would not have included in its 1970 return the value of inventories of the I.R.C. Fibers Division for 11 months of 1969 among the average value of inventories listed as of December 31, 1969.

12. Had Cyanamid acquired the assets and business of the I.R.C. Fibers Division directly or for a division of Cyanamid rather than for its wholly-owned subsidiary, Cyanamid would have included its fibers inventory in its 1970 return for the month of December, 1969 only divided by 12, and have paid a personal property tax of $11,388, or 1/12 of the amount actually paid, $136,674.

the tax year in a given fashion predicated upon its inventory at an earlier date.

 We conclude that the district court reached the correct result in this case. Section 2.5 is concerned with "the Acquisition Assets and their operation . . . ." In Article I, Section 1.1, the term "Acquisition Assets" is defined as the listed assets of the Fibers Division of M-R "as the same shall exist on the date of the Closing . . . ." Among the assets listed thereafter in Section 1.1 are "(v) all inventories of finished goods, work in process, raw materials, stores, operating supplies and packaging materials of the [Fibers] Division. . ." The liability of Cyanamid for 1970 property taxes is limited to taxes on "Acquisition Assets." 、

From an examination of paragraph 9 of the stipulation it is clear that the inventory upon which M-R paid taxes of $146,389 in 1970 was the "[m]anufacturing inventory listed as of the last day of the months of *January through November 1969*, divided by 12 . . . ." (emphasis added). The inventory on hand as of December 29, 1969 and transferred to Cyanamid on that date was not included in the calculation of M-R's 1970 personal property tax. Though some of the specific items of personal property transferred to Cyanamid may have been included in the inventory of the Fibers Division of M-R on the last day of one or more months between January and November 1969, the most reasonable construction of the agreement is that Cyanamid contracted to pay only the personal property tax which was due and payable in the year 1970 by reason of the transfer to it of the "Acquisition Assets" on December 29, 1969.

By a quirk of Ohio law the State was able to collect personal property taxes of nearly the same amounts from M-R based on its ownership of inventory used in its Fibers Division during the first 11 months of 1969 and from Cyanamid based on the actual fibers inventory as of December 31, 1969. However, this anomaly of Ohio law was nowhere referred to or explained in the contract, which was prepared by M-R.

The parties have briefed extensively the dispute between them as to whether the Ohio tax on manufacturers' inventories is an *ad valorem* tax or tax on the privilege of doing business. These distinctions appear to be irrelevant to the decision of the case. It is the duty of the court to determine the intention of the parties. The purchase agreement provided that it "shall be construed and enforced in accordance with, and governed by, the laws of the State of New Jersey."

 In *Fidelity Union Trust Co. v. Robert*, 36 N.J. 561, 178 A.2d 185, 188 (1962), the Supreme Court of New Jersey wrote:

[I]n construing contractual instruments, our courts will broadly search for the probable common intent of the parties, will consider their relations, the attendant circumstances and the objectives they were trying to obtain, and will endeavor to find a reasonable meaning "in keeping with the express general purpose." See *Tessmar v. Grosner*, supra, 23 N.J. [193], at p. 201, 128 A.2d [467] at p. 471.

The citation to *Tessmar v. Grosner, supra*, 23 N.J. at 201, 128 A.2d at 471 (1957), refers to the following language:

In the quest for the common intention of the parties to a contract the court must consider the relations of the parties, the attendant circumstances and the objects they were trying to attain. An agreement must be construed in the context of the circumstances under which it was entered into and it must be accorded a rational meaning in keeping with the express general purposes.

Even where the intention is doubtful or obscure, the most fair and reasonable construction, imputing the least hardship on either of the contracting parties should be adopted, so that neither will have an unfair or unreasonable advantage over the other. (citations omitted).

The New Jersey Superior Court stated the controlling principle of contract construction in *Integrity Insurance Co. v. Davis*, 116 N.J.Super. 417, 282 A.2d 452, 455 (1971), as follows:

It is also settled that, if possible without doing violence to the plain meaning of the language used, a court will endeavor to give a construction to a contract which is most equitable to both parties and which will not give to one party an unfair or unreasonable advantage over the other. (citations omitted).

We believe the district court's determination that the parties intended that Cyanamid pay only the personal property taxes due and payable in the year 1970 on inventories transferred to it on December 29, 1969 and held by it on December 31, 1969 is the construction of the agreement which the proper application of settled law of New Jersey requires. The judgment of the district court is affirmed.