**Zafar KHAN, Plaintiff,**

v.

**POPEYES OF MARYLAND, INC., Defendant.**

**Civ. No. H–01–1478.**

United States District Court, D. Maryland.

Jan. 4, 2002.

Zafar Khan, Baltimore, MD, pro se.

Leonard H. Pazulski, Charles E. Chlan & Assoc., Columbia, MD, for defendant.

## *MEMORANDUM OPINION*

HARVEY, Senior District Judge.

Plaintiff Zafar Khan ("Khan"), is a 56 year old Muslim[1] who was formerly employed by defendant Popeyes of Maryland, Inc. ("Popeyes") for a short period of time as a trainee. Proceeding *pro se,* plaintiff has paid the filing fee and has filed a complaint in this Court on a form furnished by the Clerk. Suit has been brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* (the "ADEA").

In his complaint, plaintiff has alleged that because of his religion, his national origin and his age, he was subjected to unlawful discrimination by defendant Popeyes. In particular, plaintiff has alleged that defendant unlawfully discriminated against him by terminating his employment on December 30, 2000. Plaintiff is seeking $507,000 as emotional damages.[2]

---

1. A native of Pakistan, plaintiff is now a naturalized citizen.

2. At a conference held with the Court on October 25, 2001, plaintiff indicated that he had now obtained other employment and that

Presently pending in the case is defendant' motion for summary judgment. In support of that motion, defendant has filed a memorandum of law, several affidavits and various exhibits.

By letter dated November 26, 2001 sent to plaintiff and the defendant's attorney, the Court set the following schedule for the filing of and the briefing of defendant's motion for summary judgment:

(1) Defendant's motion for summary judgment was due on or before December 14, 2001;

(2) Plaintiff's opposition to defendant's motion was due on or before January 4, 2002; and

(3) Defendant's reply to plaintiff's opposition was due on or before January 14, 2002.

After defendant had filed its motion for summary judgment on December 14, 2001, plaintiff was advised by the Clerk of this Court by letter dated December 17, 2001 that defendant had filed a dispositive motion which, if granted, could result in the entry of summary judgment against him. Plaintiff was informed in that letter that defendant's motion and the supporting papers asserted facts and matters to be true, and plaintiff was advised that he was entitled to file with his opposition to the pending motion any relevant materials, including affidavits or statements explaining the facts or matters asserted in the motion. Plaintiff was further advised that if he did not file a timely and appropriate written response, or that if such response failed to show by affidavit or statement that there was a genuine dispute of material fact, summary judgment might be entered against him.

As disclosed by the record here, no proper opposition to defendant's pending motion for summary judgment has been filed by plaintiff within the time set by the Court. In his letter to the Court of January 2, 2002, plaintiff has stated that he is unable to file an opposition to defendant's motion for summary judgment because of his inability to hire an attorney to represent him. Accordingly, he has once again requested that counsel be appointed to represent him in this case.[3] In the exercise of its discretion, the Court will once again deny this request. *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir.1984).

Although plaintiff has not furnished proper evidentiary materials, the Court will not, because of his *pro se* status, enter summary judgment against plaintiff on the ground that he has not complied with the requirements of Rule 56. Rather, since plaintiff is here proceeding *pro se*, the Court will consider the facts and arguments which were advanced in support of his claims and which are contained in his complaint and the attachments thereto. Plaintiff sent two letters to the President of Popeyes, one dated January 5, 2001 and the other dated January 17, 2001. These letters describe in some detail the basis for the Title VII and ADEA claims asserted in plaintiff's complaint. These documents will be considered here as plaintiff's opposition to defendant's pending motion for summary judgment.

Following its review of the pleadings and the memoranda and exhibits filed in support of defendant's pending motion for summary judgment, the Court has concluded that no hearing is necessary for a decision. *See* Local Rule 105.6. For the

---

he is not in this case seeking reinstatement, back pay or front pay.

**3.** By Order entered on October 26, 2001, the Court denied plaintiff's motion for appointment of counsel.

reasons stated herein, defendant's motion for summary judgment will be granted.[4]

# I

## Background Facts

Defendant Popeyes operates fast food restaurants in Maryland. On December 4, 2000, plaintiff was employed by defendant as a management trainee at a Popeyes' restaurant located on Fort Avenue in Baltimore. During the period of his training, plaintiff was required to take and pass certain written tests. Although he successfully passed several of the tests, he was unable to achieve a passing score on the so-called "Batter–Fry" test.[5] He took that test three separate times but was not able to attain the required passing score on any of these occasions. On December 30, 2000, some three and one half weeks after plaintiff had started his management training, he was discharged.

Plaintiff's immediate supervisor was Chuck Ayers ("Ayers"), who was the Training Manager for defendant Popeyes. According to plaintiff, he was told by Ayers that a written test would not be required for the position which he would be filling but that he would be trained in food preparation and other job skills by receiving on-the-job training. Plaintiff asserts that some one and one-half weeks after his training commenced, Ayers asked him what was his nationality and his religion and how old he was. When plaintiff responded that he was from Pakistan, was a Muslim and was 55 years of age, Ayers allegedly stated, "I know Pakistanis and Muslims" and also said that if he had known that plaintiff was 55 years old, he would never have hired him.

After his discharge, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). An undated Notice of Right to Sue was mailed to him some time before February 28, 2001. In its letter, the EEOC stated that it was unable to conclude that the information available to it established the violation which plaintiff had alleged. On February 28, 2001, a formal Notice of Right to Sue was issued by the EEOC. On May 22, 2001, plaintiff filed his complaint in this Court.

# II

## Summary Judgment Principles

It is well established that a defendant moving for summary judgment bears the burden of showing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir.1984). Where, as here, the nonmoving party will bear the ultimate burden of persuasion at trial, "the burden on the moving party [at the summary judgment stage] may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

One of the purposes of Rule 56 of the Federal Rules of Civil Procedure is to require a plaintiff, in advance of trial and after a motion for summary judgment has been filed and properly supported, to come forward with some minimal facts to show

---

**4.** Since there is no merit to plaintiff's opposition to defendant's motion for summary judgment, there is no need for the Court to await the receipt of defendant's reply to plaintiff's letter of January 2, 2002.

**5.** Plaintiff was also not able to pass the so-called "Packaging" test.

that the defendant may be liable under the claims alleged. *See* F.R.Civ.P. 56(e). If the nonmoving party "fail[s] to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof," then "the plain language of Rule 56(c) mandates the entry of summary judgment." *Catrett,* 477 U.S. at 323, 106 S.Ct. 2548.

While the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the party opposing the motion, *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985), "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). " 'A mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely.' " *Barwick,* 736 F.2d at 958–59 (quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 640 (E.D.N.C. 1966), *aff'd,* 388 F.2d 987 (4th Cir.1967), *cert. denied,* 390 U.S. 959, 88 S.Ct. 1039, 19 L.Ed.2d 1153 (1968)). Moreover, only disputed issues of *material* fact, determined by reference to the applicable substantive law, will preclude the entry of summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In the absence of the necessary minimal showing by the plaintiff that the defendant may be liable under the claims alleged, the defendant should not be required to undergo the considerable expense of preparing for and participating in a trial. *See Catrett,* 477 U.S. at 323–24, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 256–57, 106 S.Ct.

2505. Indeed, the Fourth Circuit has stated that, with regard to motions for summary judgment, the district courts have "an affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987) (quoting *Catrett,* 477 U.S. at 323–24, 106 S.Ct. 2548).

In considering a motion for summary judgment in a discrimination case like this one, a trial court must take special care because motive is often the crucial issue. *Ballinger v. North Carolina Agric. Extension Serv.,* 815 F.2d 1001, 1005 (4th Cir.), *cert. denied,* 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). Nevertheless, disposition of a Title VII or an ADEA suit under Rule 56 is appropriate if the plaintiff cannot prevail as a matter of law. *Conkwright v. Westinghouse Elec. Corp.,* 739 F.Supp. 1006, 1013 (D.Md.1990), *aff'd,* 933 F.2d 231 (4th Cir.1991). Indeed, "one purpose of the allocation of burdens of proof and production in Title VII and ADEA actions is to help district courts to identify meritless suits and stop them short of a full trial." *Id.* at 1013 (citations omitted).

Applying these principles to the facts of record here, this Court has concluded that defendant's motion for summary judgment must be granted.

### III

#### *Applicable Law*

The legal standards to be applied to plaintiff's Title VII claim and to his ADEA claim are essentially identical. In order to prevail on either claim, plaintiff must prove that, but for defendant's discriminatory motive, plaintiff would not have been discharged. *Tuck v. Henkel Corp.,* 973 F.2d 371, 374 (4th Cir.1992); *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 458 (4th Cir.1989); *EEOC v. Western Elec. Co.,* 713

F.2d 1011, 1014 (4th Cir.1983). Plaintiff may meet this burden under ordinary principles of proof using direct or indirect evidence or, in the alternative, under the judicially created proof scheme established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and reaffirmed in *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). *See also Goldberg v. B. Green & Co.,* 836 F.2d 845, 847 (4th Cir.1988).

Under the *McDonnell Douglas* proof scheme, plaintiff must initially establish by a preponderance of the evidence a *prima facie* case of employment discrimination. In order to make out a *prima facie* case of age or Title VII discrimination, plaintiff must establish: (1) that he is a member of a protected class; (2) that he was discharged; (3) that at the time of his discharge, he was performing his job at a level that met his employer's legitimate expectations; and (4) that following his discharge, he was replaced by someone of comparable qualifications outside the protected class. *Tuck,* 973 F.2d at 375 (age discrimination); *Wileman v. Frank,* 979 F.2d 30, 33 n. 5 (4th Cir.1992) (Title VII discrimination);. The establishment of a *prima facie* case eliminates the most common nondiscriminatory reasons for a discharge, namely that plaintiff was not qualified for the job or that the job was no longer available. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

If a plaintiff establishes a *prima facie* case, then the defendant has the burden of articulating a legitimate, nondiscriminatory reason for terminating plaintiff's employment. *Tuck,* 973 F.2d at 375. The articulation of a legitimate, nondiscriminatory reason for plaintiff's discharge rebuts the inference of discrimination raised by the *prima facie* case. At that point, the ultimate burden shifts back to the plaintiff to prove by a preponderance of the evidence that the proffered explanation was a pretext and that the defendant intentionally discriminated against him on the basis of his age, national origin or religion. For purposes of defeating defendant's motion for summary judgment in this case, plaintiff Khan must therefore produce evidence from which a reasonable jury could infer that defendant's action was based upon his age, upon his national origin or upon his religion, or that defendant's proffered legitimate, nondiscriminatory reason for the adverse employment action is a pretext for unlawful discrimination. *Tuck,* 973 F.2d at 375; *Wileman,* 979 F.2d at 33. *See also St. Mary's Honor Center,* 509 U.S. at 511, 113 S.Ct. 2742.

## IV

### *Discussion*

First, it is clear from the record here that there is no genuine issue of material fact in this case under an "ordinary methods of proof" analysis. Many of the allegedly disputed facts relied upon by plaintiff are not *material* facts. Plaintiff has produced neither direct nor indirect evidence of age or national origin or religious discrimination. Plaintiff has relied on inferences which he derives from certain statements made to him by Ayers during the short period of his employment. However, there has been no showing that there was a causal connection between the statements in question and plaintiff's discharge. Moreover, as discussed hereinafter, the evidence in this case establishes as a matter of law that no discriminatory motive on the part of defendant Popeyes resulted in plaintiff's discharge. Thus, if plaintiff is to prevail in this case, he must employ the *McDonnell Douglas* rationale.

■ On the record here, this Court finds and concludes that plaintiff has failed to established a *prima facie* case of age discrimination, of national origin discrimination or of discrimination on the basis of his religion. Plaintiff has met the first two requirements of a *prima facie* case by producing evidence establishing that he was 55 years of age at the time of his discharge, that he was from Pakistan, that he was a Muslim, and that he was discharged. However, plaintiff has not come forward with material evidence indicating that at the time of his discharge he was performing his job at a level which met his employer's legitimate expectations. Nor is there evidence that he was replaced by someone of comparable qualifications outside the protected group.

Defendant is a Maryland corporation which owns and operates fast food restaurants using the name "Popeyes" under a franchise agreement. Each franchise is required to conduct training certification of personnel being hired to work in each restaurant. Each trainee is required to pass written tests relating to various duties and responsibilities of Popeyes' employees. Although he took the "Batter Fry" test on three different occasions, plaintiff did not achieve a passing mark at any time.[6] Accordingly, on December 30, 2000, one day after he had failed the Batter Fry test for the third time, plaintiff's employment was terminated.

Under the circumstances, it is apparent that at the time of his discharge, plaintiff was not performing his job at a level which met his employer's legitimate expectations. Plaintiff admits that he did not pass the test in question, and he has not here challenged defendant's evidence indicating that all Popeyes' trainees are required to pass all required tests before their employment becomes permanent. In opposing defendant's motion, plaintiff contends that, when he was initially hired, Ayers told him that he would not have to take any written test. Although Ayers denies that any such statement was made, the Court in its consideration of defendant's motion for summary judgment must credit plaintiff's version of what was said to him. However, when credited, the statement in question is not evidence of a discriminatory animus. If Ayers made the statement attributed to him, he was not authorized to do so under company regulations. The record here establishes that all Popeyes' trainees are given written tests during the period of their training and that all trainees are required to achieve passing scores before they are hired.[7]

■ Furthermore, plaintiff has not shown that after he was fired, he was replaced by someone of comparable qualifications outside the protected class. Evidence of record establishes that all franchise trainees who were eventually hired at defendant's Maryland restaurants did in fact take and pass all of the required written tests. There is no evidence in the record here indicating that a trainee who, like plaintiff, did not pass the Batter Fry test was later retained as a full time employee.

Even assuming, *arguendo*, that the Court were to find that plaintiff had made out a *prima facie* case of discrimination on the present record, summary judgment in favor of the defendant would still be grant-

---

**6.** Plaintiff took the "Batter Fry" test on December 23, on December 26 and on December 29, 2000. On none of these occasions did plaintiff achieve the necessary passing grade of 90%.

**7.** Defendant has submitted records of some 29 franchise trainees recently hired at its Maryland restaurants. Each one took and passed all of the tests required by Popeyes.

ed. Defendant has in this case articulated a legitimate, nondiscriminatory reason for the termination of plaintiff's employment, and plaintiff has not presented material evidence which would raise a triable issue as to pretext.

As support for his claim of intentional discrimination, plaintiff places primary reliance on several statements allegedly made by Ayers. According to plaintiff, Ayers stated, "I know Pakistanis and Muslims" and also said that plaintiff was "an old man" at age 55.

Accepting these statements as true, this Court concludes in any event that they do not constitute direct or circumstantial evidence of an intent on the part of defendant Popeyes to discharge plaintiff because of his age, because of his nationality or because of his religion.[8] *See Goldberg,* 836 F.2d at 848. Plaintiff has not shown, as he must, a sufficient nexus between the alleged discriminatory statements and his discharge. *See EEOC v. Clay Printing,* 955 F.2d 936, 942 (4th Cir.1992). He was fired because he did not pass all of the written tests which he took, a requirement necessary for continued employment. Fourth Circuit decisions indicate that a court should closely scrutinize whether alleged remarks can reasonably be interpreted as evidence of discriminatory intent, since the barrier placed by the Fourth Circuit is "extremely high." *Collier v. Service America Corp.,* 934 F.Supp. 168, 171 (D.Md.1996). Although Ayers' sporadic remarks were at the most insensitive, they have not been clearly linked to the actual termination of plaintiff's employment. The Court accordingly concludes that plaintiff has not presented evidence indicating that the reason given for the termination of his employment was pretextual.

Plaintiff also complains that he was subjected to discriminatory treatment because he was required to perform menial tasks like sweeping, mopping and washing dishes. According to plaintiff, he was hired for a "management" position. It is apparent on the record here that plaintiff has misconstrued the nature of his short employment with defendant Popeyes. He was considered a "Franchise Trainee" and was during the three and one-half week period in question being trained to perform many different types of cooking, packaging, oven cleaning, safety and other aspects of restaurant management. Before being hired on a permanent basis, all franchise employees of defendant Popeyes were first trained in store "management." Plaintiff was not being trained for employment at a high level management position, and defendant's requirement that he perform menial tasks did not on the record here constitute unlawful discrimination.

## V

### *Conclusion*

In sum, plaintiff has not established a *prima facie* case of age, national origin or religious discrimination. Moreover, he has not produced evidence of discrimination sufficient to create a genuine issue of material fact concerning whether defendant intentionally discriminated against him because of his age, because of his national origin or because of his religion. Accordingly, for all the reasons stated, defendant's motion for summary judgment will be granted. An appropriate Order will be entered by the Court.

---

**8.** If defendant intended to discharge plaintiff because of his age, nationality or religion, it would certainly not have given him the opportunity to take the "Batter Fry" test two more times after he initially failed it.